IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2003 Session


**KELVIN SHOUGHRUE, ET AL. v.
ST. MARY'S MEDICAL CENTER, INC., ET AL.**


**Appeal from the Circuit Court for Knox County**
**No. 2-408-97   Harold Wimberly, Judge**

**FILED MAY 4, 2004**

**No. E2003-00116-COA-R3-CV**


In this appeal in a medical malpractice lawsuit, the Appellants, J.D. Lee and the law firm of Lee, Lee & Lee, contend that the Knox County Circuit Court erred in its award of attorneys' fees. We affirm the judgment of the Trial Court and remand.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Affirmed; Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., not participating.


W. Morris Kizer, Knoxville, Tennessee, for the Appellants, J.D. Lee and the law firm of Lee, Lee & Lee.


Amelia G. Crotwell and Farrell A. Levy, Knoxville, Tennessee, for the Appellees, L. Martin McDonald and McDonald, Levy & Taylor.


Brian H. Trammell, Knoxville, Tennessee, for the Appellee, Jennifer Bjornstad.

# OPINION

Two days after his birth at St. Mary's Medical Center in December of 1993, Devin Shoughrue suffered general brain damage due to medical complications and, since that time, has experienced permanent and severe associated health problems as a result of which he will require extensive medical care for the rest of his life.

In November of 1994, Devin's parents, Kelvin and Laura Shoughrue, retained the Appellants, J.D. Lee and the law firm of Lee, Lee & Lee, (hereinafter "Mr. Lee" and "the Lee firm" respectively) to represent them and Devin in their claims against St. Mary's Medical Center, Dr. Neil Feld, Dr. Patrick Hodges, and the East Tennessee Neonatal Associates, P.C. (hereinafter "Defendants") for compensatory damages related to the injuries suffered by Devin. The agreement of retention entered into between Mr. and Ms. Shoughrue and Mr. Lee provides as follows regarding Mr. Lee's compensation for his services as attorney:

> I agree to pay Thirty-Three and One-Third (33-1/3) Percent of the total recovery as a fee whether suit is by compromise, trial and verdict, or trial, verdict and appeal. In the event of an appeal, I agree that the accrued interest on the total judgment in the event it is successful be paid to J.D. Lee. IF THERE IS NO RECOVERY, THERE WILL BE NO CHARGE FOR ATTORNEYS' FEES.

In June of 1997[1], Mr. Lee filed a complaint against Defendants on behalf of Kelvin Shoughrue and Laura Shoughrue, "individually and as natural guardians and next friend" of Devin Shoughrue, a minor. The complaint requests that Mr. and Ms. Shoughrue be awarded damages of $2,500,000 and that Devin be awarded damages of $22,500,000 for the injuries suffered by Devin as a result of the alleged negligent acts and omissions of Defendants. This complaint subsequently was amended to include "lack of informed consent" and "medical battery" as additional grounds for recovery.

The parties engaged in an unsuccessful attempt to settle the case by mediation in February of 2001, at which time Mr. Lee proposed that the case be settled for $12,500,000, an offer previously presented to Defendants in September of 2000. Defendants' response at this meditation was to make a counter-offer of $350,000. Mr. Lee then increased his demand to $22,500,000 and, shortly thereafter, the mediation ended.

On March 1, 2001, Ms. Shoughrue died and her cause of action was revived when an administrator *ad litem* for her estate was substituted in her place. On March 7, 2001, Jean Baker, Devin's maternal grandmother, filed a petition in Knox County Juvenile Court to obtain temporary custody of Devin because, according to her testimony, Mr. Shoughrue has a "violent temperament"

---

[1]This was the second complaint filed in this case. The first complaint, filed in December of 1994, was dismissed without prejudice on June 28, 1996.

and she was concerned for Devin's safety.  This petition was granted by order of the Juvenile Court entered *nunc pro tunc* to March 22, 2001.

The Appellees, L. Martin McDonald and the law firm of McDonald, Levy & Taylor (hereinafter "Mr. McDonald" and "the McDonald firm" respectively) appeared on behalf of Ms. Baker at a hearing before the Trial Court on May 10, 2001.  Mr. McDonald advised the Trial Court that he was investigating whether, as Devin's temporary custodian, Ms. Baker should intervene for Devin in the Circuit Court lawsuit and work with Mr. Lee with respect to negotiations and settlement.  The following day Mr. McDonald filed a petition which requested that Ms. Baker be allowed to intervene in the lawsuit and that a guardian *ad litem* be appointed for Devin with full authority to manage his interest in the case pursuant to Tenn. Code Ann. § 34-11-107.

At a hearing on May 15, 2001, the Trial Court appointed the Appellee, Jennifer Bjornstad, who had previously served as Devin's guardian *ad litem* in Juvenile Court, as Devin's guardian for the purpose of investigating the status of the case, the prospects of settlement, and to assure that Devin's interests were being protected.  The Trial Court also appointed attorney Gary Dawson to assist her in such investigation.

On May 18, 2001, a hearing was held to discuss, *inter alia*, whether a second mediation should be ordered.  Ms. Bjornstad advised the Trial Court that it would be in Devin's best interest that Ms. Baker be allowed to intervene in the case.  The Trial Court agreed that Ms. Baker should be allowed to participate in the case and stated as follows:

> So looking at the guardian's report, the maternal grandmother must have some part in this proceeding.  Now, she does not necessarily come as a separate plaintiff, but she does have to have some part in this procedure and, through Mr. McDonald, is granted that.

The Trial Court additionally determined that further mediation should take place and that Devin's claim and Mr. Shoughrue's claim should be mediated separately, stating:

> The father's claim will be considered separately.  And as we do the first part, the part with Devin and [Ms. Shoughrue], Ms. Bjornstad and Mr. McDonald will participate.  Although Mr. Lee, you know, is obviously in charge of this, they will participate.

On May 28, 2001, Ms. Baker signed an agreement employing Mr. McDonald and the McDonald firm as her attorneys.

A short time before the second mediation Mr. Lee conducted a mock trial of the case wherein he represented the plaintiffs and Mr. McDonald represented Defendants.  This exercise resulted in an eight to four jury verdict in favor of Defendants.  Mr. Shoughrue, who is asserted by Mr. Lee to be a necessary witness in this matter, testified at the mock trial.  Virginia Schwamm, an

attorney who assisted Mr. McDonald on this occasion testified that Mr. Shoughrue was "belligerent", "angry" and "disrespectful" and "admitted things he didn't need to. You could see on the faces of the mock jury that they didn't like him at all."

The second mediation was on June 15, 2001. Mr. McDonald, Ms. Bjornstad, Mr. Lee, and David Lee, another attorney employed by the Lee firm, were among those present. Ms. Baker also was present for a portion of the mediation, as was Mr. Shoughrue. Mr. Shoughrue left when he learned that the Trial Court had, on that day, dismissed his claim in the case. Mr. Lee asserts that, prior to this mediation, Mr. McDonald and Ms. Bjornstad had agreed that they would not settle Devin's claim for an amount less than $3,500,000 but, contrary to that agreement, Mr. McDonald and Ms. Bjornstad presented counsel for Defendants with counter-demands of less than that amount. Mr. Lee further asserts that these demands were made over his objection and that it eventually became apparent to him that Mr. McDonald and Ms. Bjornstad were dealing with the mediator to the exclusion of Mr. Lee. Mr. Lee states, "[I]t became obvious to me that they were about to be snookered or give the child's case away. And toward the end of the day, like at 6:15 in the evening, I left." David Lee also left the mediation at that time. Although the mediator acknowledged their departure, they did not inform Mr. McDonald or Ms. Bjornstad that they were leaving and neither Mr. Lee nor David Lee requested that the mediation be halted. The mediation continued in the absence of Mr. Lee and David Lee and, eventually, a settlement in an amount[2] less than $3,500,000 was proposed which was accepted by Ms. Bjornstad and Ms. Baker.

Upon learning of the proposed settlement which had been reached in his absence, Mr. Lee faxed a letter to, among others, Ms. Bjornstad, Mr. McDonald and attorneys for Defendants stating that "On behalf of the plaintiffs, the settlement offer of [the proposed amount] is rejected."

On June 18, 2001, Mr. Lee filed an intervening complaint and motion to intervene in the case on behalf of Penn Western Benefits, Inc., Ms. Shoughrue's insurance carrier, with regard to its subrogation interest related to medical benefits paid on behalf of Devin pursuant to health insurance issued to Ms. Shoughrue through her employer. On that same date, Mr. Lee contacted an attorney representing Penn Western and informed him that the proposed settlement amount agreed to by Mr. McDonald and Ms. Bjornstad implicated the "made whole doctrine"[3] and, as a result, he (i.e., Mr. Lee) would have to withdraw as counsel for Penn Western.

On June 19, 2001, a hearing was conducted to inform the Trial Court as to the outcome of the mediation on June 15. Mr. Lee objected to the settlement amount as being inadequate. However, the next day the Trial Court approved the proposed settlement of the claims of Devin and Ms. Shoughrue's estate and an order to that effect was entered on July 13, 2001. The Trial Court reserved one-third of the settlement amount to cover attorneys' fees. Mr. Lee also

---

[2]Pursuant to the order of the Trial Court entered July 13, 2001, the amount of the settlement is under seal and confidential.

[3]The "made whole doctrine" provides that an injured party must receive full compensation for his losses before an insuror can exercise its subrogation rights. *See generally, Blankenship v. Estate of Bain*, 5 S.W.3d 647 (Tenn. 1999).

requested at this hearing that the Trial Court allow him to withdraw from representation of Penn Western although there is no indication that this request was granted.

In May and August of 2002, the Trial Court conducted hearings on fee applications filed in the case by Mr. Lee and the Lee firm and by Mr. McDonald and the McDonald firm. On December 18, 2002, the Trial Court entered its order decreeing that Mr. Lee and the Lee firm should be awarded attorneys' fees of $175,000 plus accrued interest which was "in addition to attorney's fees previously awarded to J.D. Lee and the firm of Lee, Lee & Lee in the total amount of $138,768.00 pursuant to orders entered August 10, 2001, and November 21, 2002." Mr. McDonald and the McDonald firm were awarded attorneys' fees in the amount of $175,000 plus accrued interest for his services in the case. The remaining funds reserved from the settlement amount for potential attorneys' fees were returned to Devin's estate. Mr. Lee and the Lee firm filed an appeal of this order.

On January 16, 2003, Ms. Bjornstad, as Devin's guardian *ad litem*, also filed an appeal of the Trial Court's order of December 18, 2002. Mr. Lee and the Lee firm filed an objection to Ms. Bjornstad's challenge to the award and distribution of attorneys' fees on grounds that she was without standing. On April 21, 2003, the Trial Court entered its order finding that Ms. Bjornstad did have standing to participate in the case on the fee dispute issues. Thereafter, Mr. Lee and the Lee firm filed their appeal of this order as well. Upon motion of Mr. Lee and the Lee firm, we entered an order consolidating the two appeals on July 17, 2003.

Although in their brief Mr. Lee and the Lee firm articulate numerous issues for our review, all of these are included within the following three issues which, as restated, are:

1. Did the Trial Court err in determining the amount of attorneys' fees to be awarded to Mr. Lee and the Lee firm?

2. Did the Trial Court err in its award of attorneys' fees to Mr. McDonald and the McDonald firm from that portion of the settlement amount reserved for attorneys' fees?

3. Does Ms. Bjornstad have standing to pursue an appeal regarding Mr. Lee's dispute of the award of attorneys' fees in this case?

The first issue we address is whether the Trial Court erred in its determination of the amount of the attorneys' fees Mr. Lee and the Lee firm were awarded in this case.

In *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002), we noted that "a determination of reasonable attorney's fees and costs is necessarily a discretionary inquiry" and that, normally, an appellate court will defer to the trial court's determination absent an abuse of discretion. Our Supreme Court has indicated that a trial court has abused its discretion when it "either applied an incorrect legal standard or reached a clearly unreasonable decision, thereby causing an injustice to the aggrieved party." *Kline v. Eyrich,* 69

S.W.3d 197, 204 (Tenn. 2002). To the extent that reasonable minds can disagree about the trial court's discretionary decision, such decision will be upheld. *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000).

In *Killingsworth* we discussed various factors to be considered in determining the reasonableness of an attorneys' fee. These factors are currently set forth at Tenn. Sup. Ct. R. 8, RPC 1.5. and include, *inter alia*:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) Whether the fee is fixed or contingent.

*See* Tenn. Sup. Ct. R. 8, RPC 1.5; *Killingsworth*, 104 S.W.3d at 534. With respect to the eighth factor, we recognized in *Killingsworth* that the attorneys' fee should be greater when contingent than when fixed. *Id*. (citing *United Med. Corp. of Tenn. v. Hohenwald Bank & Trust Co.,* 703 S.W.2d 133, 136 (Tenn. 1986)).

Comment (4) to RPC 1.5 recognizes that "[i]n some circumstances, other law may regulate the fees and expenses charged by lawyers. For example, Tennessee law regulates contingent fees in medical malpractice cases. See Tenn. Code Ann. § 29-26-120 (1980)."

Tenn. Code Ann. § 29-26-120 provides as follows:

> Compensation for reasonable attorneys' fees in the event an employment contract exists between the claimant and claimant's attorney on a contingent fee arrangement shall be awarded to the claimant's attorney in a malpractice action in an amount to be determined by the court on the basis of time and effort devoted to the litigation by the claimant's attorney, complexity of the claim and other pertinent matters in connection therewith, not to exceed thirty-three and one third percent (33 1/3%) of all damages awarded to the claimant.

Mr. Lee argues that the Trial Court abused its discretion by failing to apply the correct legal standard in determining his fee in that it did not consider the factors set forth at RPC 1.5. He also argues that the Trial Court's award of attorneys' fees was "clearly unreasonable given the nature of the case, the skills necessary to perform the services, the amount of time spent, and the results

obtained, as well as all other factors which should be considered." Mr. Lee asserts that under the factors set forth at RPC 1.5, he is entitled to attorneys' fees equaling one-third of the amount of the settlement in this case.

First, we are compelled to point out that under Tenn. Code Ann. § 29-26-120 the contingency fee allowed in a medical malpractice case such as this one is "*not to exceed* thirty-three and one third percent." (Emphasis added.) As the Supreme Court of this state has noted, the obvious purpose of this language is to regulate the *maximum* amount a plaintiff's attorney may receive from damages paid. *Guess v. Maury*, 726 S.W.2d 906, 922-23 (Tenn. Ct. App. 1986). This ceiling imposed on attorneys' fees was part of our Legislature's attempt to contain the costs of medical malpractice litigation. *Newton v. Cox*, 878 S.W.2d 105, 107 (Tenn. 1994). The amount of Mr. Lee's compensation, and in fact the total attorneys' fees paid by "claimant" is limited by the provisions of Tenn. Code Ann. § 29-26-120 to a maximum of thirty-three and one-third percent. Mr. Lee is not automatically entitled to thirty-three and one-third percent of the settlement amount merely by reason of the fact that his retention agreement states that that is the amount he shall receive. Rather, in accord with the statute and the public policy of this State, that amount is the maximum of "claimant's" attorney fees and whatever amount Mr. Lee receives will be determined by the Trial Court in accordance with that statute.

We further note that it is well established under the law in Tennessee that a "next friend cannot contract with counsel for the amount of their fees so as to bind the minor." *City of Nashville v. Williams*, 82 S.W.2d 541 (Tenn. 1935). Where an attorney confers a benefit upon a minor child he is entitled to the reasonable value of his services from the amount recovered; however, it is left to the court to determine what that value is under the circumstances presented. *See Dunnivant v. Mitchell*, No. 01A01-9310-CV-00473, 1994 Tenn. App. LEXIS 259, at *4 (Tenn. Ct. App. May 11, 1994), *appl. perm. appeal denied Aug. 21, 1994*. Accordingly, regardless of the fact that Mr. and Ms. Shoughrue agreed that Mr. Lee would receive thirty-three and one-third of the total recovery in this case, he is only entitled to that fee which the Trial Court determines to be reasonable.

Although Mr. Lee contends that the Trial Court failed to consider the factors set forth at RPC 1.5, the Trial Court specifically noted the applicability of Tenn. Code Ann. § 29-26-120 in announcing its decision regarding attorneys' fees on December 3, 2002. The Trial Court read the statute into the record before announcing its decision and recognized that it was required to take into account the provisions of the statute in determining the award of attorneys' fees. We construe Tenn. Code Ann. § 29-26-120 to include those factors set forth at RPC 1.5. The statute's requirement that the court consider the time and effort devoted to the litigation and the complexity of the claim is, in essence, a restatement of that language found in the first factor under RPC 1.5 which requires that the court consider "the time and labor required, [and] the novelty and difficulty of the questions involved." The remaining factors set forth at RPC 1.5 are also included as factors to be considered under Tenn. Code Ann. § 29-26-120 by implication of the phrase "other pertinent matters." We respectfully disagree that the Trial Court failed to apply the correct legal standard in reaching its decision as to attorneys' fees. Although at the hearing on December 3, 2002, the Trial Court did not

expressly state findings specific to each factor set forth at RPC 1.5, it is our determination that those findings that the Trial Court did state are sufficient to support its discretionary decision regarding the attorneys' fees awarded to Mr. Lee and the Lee firm.

As noted, the Trial Court at the hearing on December 3 recognized Tenn. Code Ann. § 29-26-120 as the legal authority for its decision. The Trial Court then presented a summary of the history of the case from the time of Devin's birth in December of 1993 and the filing of the first complaint in December of 1994. The Trial Court noted that trial of the case originally was scheduled to be held in March of 1996, but that continuances were granted for various reasons culminating in a trial date of June 25, 2001. The Trial Court acknowledged Mr. Lee's services in the case up until January of 2001, stating as follows:

> Mr. Lee had himself or through others prepared a case for the plaintiff, a case which would and had survived summary judgment and would in all probability have been allowed to go to a jury upon trial. Obviously, had this not happened, there would not have been any settlement at all. We would not even be here today. By accomplishing this, at the very least Mr. Lee had created a situation where, as described in testimony by one defense lawyer, that even though a defendant through its attorney would feel that it had stronger or superior witnesses, the tragic severity of the child's condition in such a situation could result in a settlement.

Although the Trial Court recognized Mr. Lee's contributions to the case, it also found problems with aspects of Mr. Lee's legal services subsequent to January of 2001, noting that "[a]fter that period of time, Mr. Lee's actions and his explanations for them are, quite frankly, not understandable to the Court."

The Trial Court stated that, at the time of the first mediation, Mr. Lee apparently was representing Devin, his parents, Ms. Shoughrue's health insurance company, and litigation funding lenders. With regard to Mr. Lee's representation of both Devin and his father, the Trial Court cited language from a January 2, 2001, interoffice memorandum to Mr. Lee from David Lee which states as follows:

> There is a conflict of interest between Kelvin, and his Son. Kelvin wants money for drugs (including marijuana), and really isn't primarily concerned about his son.
>
> Kelvin is mentally ill. He admitted this in the meeting this morning.
>
> Kelvin has threatened to kill people. I've heard him say such about the Judge. Dan tells me that Kelvin threatened to kill medical providers.

The relationship between he and us is not workable. He cannot discuss the case. When he left the continuance hearing, he seemed to understand that the Judge was protecting the record. (Of Course, you've been dealing with all his insanity, and know all this.)

Most importantly, separating Devin's case from Kelvin will only help Devin and Laura…. [The] jury will not want to give money to Kelvin. Reasonable people will quickly understand that he should not get money. We know from experience that he will spend his money on drugs.

**We absolutely must withdraw from representation of him.**

(Emphasis in original.)

Mr. Lee argues that no conflict of interest was presented by his representation of Devin and his father because the Trust Company was appointed conservator of Devin's estate and would have handled all monies recovered by Devin as a result of the lawsuit. Mr. Lee asserts that Mr. Shoughrue "would have never had the money in his possession, and that fact would have been made known to the jury."

The Trial Court acknowledged the appointment of the Trust Company as conservator stating:

Now, Mr. Lee had already sought to have the [T]rust [C]ompany made a party to this case, in effect substituting the [T]rust [C]ompany for the father, apparently so that the argument could be made to the jury that the [T]rust [C]ompany, a local financial company and not the father, would be the beneficiary of any recovery. This would to some extent solve a problem noted by witnesses who testified on the results of a mock trial on the facts of this case staged by Mr. Lee. It was reported to this Court that the jury in the mock trial did not like the father, did not believe him, and were reluctant to award money if the father would have any control over it.

While the placement of recovered funds with the Trust Company would prevent Mr. Shoughrue's direct access to the funds, it does not follow that Mr. Shoughrue never would realize any benefit from those funds. Although the jury might be aware of the fact that placement of the funds with the Trust Company would prevent Mr. Shoughrue from controlling the funds directly, the jury also might anticipate that, should Mr. Shoughrue regain custody of Devin, he would, nonetheless, benefit from the use and enjoyment of assets purchased with such funds. We do not assess the likelihood of Mr. Shoughrue's regaining custody. However, we cannot say that a jury would not have been prejudiced by the potentiality of that event and the possibility that Mr. Shoughrue would, as a result, realize an indirect benefit from funds recovered by Devin. Accordingly, we do not agree that the evidence preponderates against a finding that the simultaneous

-9-

representation of Devin and his father presented a conflict of interest under the particular facts of this case.

Another matter noted by the Trial Court at the hearing on December 3 is the litigation financing arranged by Mr. Lee whereby Mr. Lee obligated Devin's estate to pay lenders a one hundred percent "funding fee" on loans obtained to fund the litigation of this case. Mr. Lee describes this litigation funding in his brief as follows:

> As stated on Pages 11-12 of the Lee Fee Petition, $97,726.00 was advanced by Augusta Capital pursuant to four separate contracts and $25,000.00 was advanced by Providence, all of which was applied toward expenses which had been advanced in the case.... Of the $97,726.00 advanced by Augusta Capital, the contracts with Augusta Capital provided for repayment obligations totaling $186,452.00, the difference between the repayment obligations and the amount advanced being a funding fee for the use of the money.

The Trial Court erroneously indicated that Mr. Lee represented these litigation lenders. There is nothing in the record to show that Mr. Lee or the Lee firm has at any time in this case represented the litigation lenders, and Mr. McDonald concedes this point. Nevertheless, the fact that Mr. Lee encumbered Devin's estate with a debt for funding fees at a rate of one hundred percent remains a matter pertinent to the determination of the appropriate attorneys' fees Mr. Lee should receive in this case.

Mr. Lee argues that his contract of employment with the Shoughrues authorized him to borrow money to finance expenses, that he agreed to pay the funding fees himself as to funds which had been advanced to pay expenses, and that his actions in obtaining the litigation financing are authorized by Advisory Ethics Opinion 99-A-666 of the Board of Professional Responsibility of the Tennessee Supreme Court.

The following provisions of the employment contract between Mr. Lee and the Shoughrues are relevant to our analysis of the financing arrangements at issue:

> J.D. Lee agrees, as a matter of convenience, to advance all necessary costs, including cost of investigation, court costs, court reporters, depositions, witness fees and any other costs necessary to the proper conclusion of my case and to deduct the same from my share of the recovery.
>
> *       *       *
>
> I hereby give my power of attorney to my attorneys to execute all the complaints, notices, court dismissals and other documents necessary to the proper presentation of this case, including assignment or pledging of this document for borrowing money to finance the expenses. I authorize my attorneys to pay directly from any sums collected from any settlement or judgment hospital bills, doctor bills or other

incidental expenses which may be necessary to secure the cooperation of my creditors.

While this contract of employment authorizes Mr. Lee to borrow money to finance expenses, it does not authorize him to obligate Devin for the payment of associated funding fees which in this case were, by Mr. Lee's own description, "exorbitant." And, while it is true that Mr. Lee did assume the obligation of paying the funding fees himself, he did not assume this obligation until the Trial Court asked him to explain these funding arrangements at a hearing on June 25, 2001. We further note that Mr. Lee's agreement to assume this debt was after both of the mediations were held in this case. We agree with Mr. McDonald's testimony that "[b]y causing the child to incur this additional debt, raising the level of expenses necessary to be covered before any settlement dollars would go to the child, it made the potential for settlement a great deal more difficult …."

At the hearing on December 3 the Trial Court also noted that, after the death of Ms. Shoughrue, "there was no one representing the child with whom Mr. Lee communicated in an attempt to keep such person reasonably informed …." Mr. Lee contends that this finding is erroneous and in his brief states as follows:

> Mr. Lee testified that prior to Mrs. Baker's involvement with Mr. McDonald, he and she had no problems, that he spoke with her, and that she was involved with Dr. Thompson in connection with the formulation of Devin's life care plan. After Mrs. Baker retained Mr. McDonald, Mr. Lee, of course, dealt with Mr. McDonald. Mr. Lee also communicated with Kelvin Shoughrue, Devin's father, whose parental rights had not been terminated.... Clearly, the Court was in error in finding that Mr. Lee had failed to keep a representative of the client informed. In this regard, it is significant to note that Mrs. Baker testified that someone from Mr. Lee's office called her on Mr. Lee's behalf, wanting some information, but Mrs. Baker "didn't want to talk to her."

As previously noted, Ms. Shoughrue died on March 1, 2001, and Ms. Baker was granted custody of Devin three weeks later, on March 22. Although Ms. Baker did testify that she was called by an individual from Mr. Lee's office requesting information "about Social Security and the handicap van", we find no evidence that she was kept informed of the progress of the case from the time she was granted custody of Devin until she retained Mr. McDonald as her attorney in May of 2001, when as Mr. Lee correctly states, all communication properly would have been directed to her attorney.

With regard to Mr. Lee's assertion that he communicated with Mr. Shoughrue, we do not agree that Mr. Shoughrue was representing Devin in light of the fact that the Juvenile Court found that Mr. Shoughrue should be deprived of custody and appointed Ms. Baker as Devin's custodian. Further evidence that Mr. Shoughrue was not representing Devin's interests is provided by the above referenced memorandum from David Lee which recites that there is a conflict of

interest between Mr. Shoughrue and Devin and the following testimony of Ms. Bjornstad in response to being asked why she was concerned about Mr. Shoughrue being a part of the trial:

> Because of his relationship with the child. His involvement, in my opinion, was extremely detrimental to the case because of his relationship with the child. In the year prior, or year and a half, he only had six overnight visits with the child. Four of those were because the mother went out of town to Vanderbilt because she was having heart problems. He had gone in 1999 and 2000 to New Orleans for eight months and had no contact with the child.
>
> He did not have a close relationship with the child, but was fighting for custody and it was my belief that he wanted custody of the child so he could have the money from this suit. He was also a drug user. There was proof that he was a very violent person, an abusive person, and I thought he was just detrimental to the case.

The Trial Court also found that Mr. Lee did not consider Devin's "legitimate needs and objectives" in this case, stating as follows:

> In this regard, we would note that factors which influenced the guardian and her assessment of the proposed settlement included actual money needs of the child, what could be spent for him and, sadly, the life expectancy of the child. While we hope not, it may well be, as shown by some medical evidence available for this case[4], that the child by the time of the settlement had already lived more than half of the time that he will actually live. So had not Mr. Lee left the mediation and Mr. McDonald continued to negotiate and do what he did, this child in the Court's opinion would not have received any benefit up to today in all probability.

At the hearing on May 3, 2002, Mr. McDonald testified as follows regarding Devin's living conditions and needs:

> These people were living in a home that was under foreclosure. The home was a shanty. It's off of Broadway, next to a railroad track. They had a vehicle that they were moving this child about in that was bungee corded, the doors were. When they got the child's wheelchair in the van, they had to take ropes and tie the wheels steady.
>
> They did not have other funding. The furniture in the house was terrible and needed to be taken to the dump. That, along with a life expectancy, the - - if you are going to get a verdict and it is supposed to be for this child and the child

---

[4] Barbara Olson, M.D., indicated in deposition testimony on September 20, 2000, that she felt that Devin's maximum life expectancy would be 12 to 15 years.

is already seven, and if you believe Dr. Olsen, he's going to live to 12 to 15, then when is he going to get the money? When is he going to start getting some benefit out of this?

Ms. Bjornstad also testified as follows:

In my opinion after talking with witnesses and Ms. Jean Baker who takes care of - - the maternal grandmother who takes care of the child, to have a comfortable home that is roomy enough to have a wheelchair in it and a van that can transport the child. Those are his main needs.

Because of his health - - he is very fragile, his health is. He can't travel a lot, and there would be no way he could spend huge amounts of money.

\* \* \*

Basically the expenses that we were looking at that we wanted to get covered after court costs and attorneys' fees and all of those things, that he had enough money to buy a house and furnish the house and buy a vehicle, because his health care needs were taken care of by TennCare so that wasn't an issue.

This testimony of Mr. McDonald and Ms. Bjornstad shows the parameters of Devin's needs as well as the urgency of those needs. Ms. Bjornstad further testified that Mr. Lee "made the statement that wouldn't it be awful if this child didn't get $12 to $15 million, and my response was wouldn't it be awful if this child got nothing."

Although Mr. Lee testified that he thinks he could have recommended a three and one-half million dollar settlement to the Trial Court and that it was his desire to settle the case before trial, he also testified that the plaintiffs would have won if the case had been tried and would have obtained a verdict in the "[s]even and a half million to fifteen million dollar range or maybe even more." Further, Mr. McDonald testified that during the second mediation Mr. Lee stated to him that the case needed to be tried and they should end the mediation. Mr. Lee admits to having made this statement, although he asserts that it was made "mostly for the benefit of defense counsel."

The Trial Court also was presented with the testimony of Robert Watson, attorney for defendants Dr. Feld and Dr. Hodges, who stated that in his opinion Defendants would have prevailed had the case been tried and that if the case hadn't settled at the second mediation it would not have been resolved. Edward White, attorney for St. Mary's also testified that he believes that Defendants would have prevailed had the case been tried and that he does not believe his client would have been willing to pay more that the settlement amount agreed to. Mr. McDonald testified that he had "very, very serious concerns" about whether the plaintiffs would prevail in the lawsuit, especially after the mock trial conducted prior to the second mediation resulted in a jury verdict for Defendants.

Although the amount of settlement was less than the three and one-half million dollar limit proposed by Mr. Lee, Ms. Baker, Ms. Bjornstad and Mr. McDonald agreed that it was an adequate amount to meet Devin's needs and on July 13, 2001, the Trial Court entered its order approving the settlement agreement as being in Devin's best interest. Although Mr. Lee initially had rejected the settlement amount agreed to, this order was approved for entry by him and was not appealed by any party in this case.

We have noted evidence presented to the Trial Court regarding Devin's needs and the urgency of resolution, the risk of loss at trial, and the sufficiency of the settlement amount agreed to at the second mediation. Given this evidence and the fact that Mr. Lee abandoned mediation and refused to accept a settlement which later was determined by the Trial Court to be in Devin's best interest, we cannot say that the evidence preponderates against the Trial Court's finding that Mr. Lee did not consider Devin's legitimate needs and objectives.

Mr. Lee argues that the Trial Court erroneously considered matters outside the record in reaching its decision regarding attorneys' fees. The comments of the Trial Court with reference to which this argument is made were as follows:

> Mr. Lee himself, according to his testimony, has never seen any problems with this case or with his representation of the child. Basically, he has considered this to be his case. And in this regard, it has come to the Court's attention that, following the conclusion of this case, Mr. Lee filed another lawsuit in the Circuit Court of Knox County against defense lawyers in this case, the guardian in this case, the attorney contacted originally by the hospital, their law partners who took no part in any of this case, and other people, including Mr. McDonald.

> This Court suggests that a determination should be made with regard to each defendant named in that case as to whether any basis exists for that case or whether it was filed purely for spite, harassment, and to cause economic loss for defendants in that case as a result of having to defend those cases.

Mr. Lee contends that "a fair reading of the Court's comments, including the suggestion that each defendant should pursue the issue of the propriety of the filing of the lawsuit, makes it clear that the Court was significantly influenced by Mr. Lee's subsequent lawsuit." We disagree.

We find no indication that the Trial Court's final determination as to attorneys' fees was based on any conclusions it may have reached regarding Mr. Lee's other lawsuit. We construe these comments of the Trial Court to be mere *dicta*, and we do not find that they were offered by the Trial Court to support its award of attorneys' fees.

Mr. Lee also argues that, based upon implicit findings of ethical improprieties, the Trial Court erred in apparently applying fee forfeiture in awarding him and his firm an attorneys' fee

in an amount "less than they were entitled to." Mr. Lee correctly notes that at the hearing on attorneys' fees Mr. McDonald's counsel, Larry Vaughan, announced that he was not requesting forfeiture of fees because of any alleged ethical improprieties by Mr. Lee. As Mr. Vaughan stated, "I'm not arguing forfeiture of fee at all. I am arguing distribution of fee based on the outcome and the input that went into it and how we got to where we are." Mr. Lee contends:

> All opposition to Mr. Lee's fees on the basis of alleged ethical improprieties being withdrawn, Mr. Lee did not put on proof with regard to the alleged ethical improprieties that he would have otherwise presented because it was not at issue after Mr. McDonald's counsel made his statement to the Court. With all opposition removed, the Court was in error in apparently considering the same in connection with rendering its opinion.

We agree with Mr. Lee that there was no specific finding by the Trial Court of any alleged ethical improprieties on his part, and that any such allegations had been withdrawn. The basis for the Trial Court's decision, and our opinion, is not fee forfeiture because of any alleged ethical improprieties. What we are concerned with in this appeal is whether the Trial Court erred in allocating the attorney fees under Tenn. Code Ann. § 29-26-120. As we stated in *Seibers v. Pepsi-Cola Bottling Co.,* No. M1999-02559-COA-R3-CV, 2000 Tenn. App. LEXIS 818 (Tenn. Ct. App. Dec. 21, 2000), *no appl. perm. appeal filed*, "a lawyer engaging in clear and serious violations of his or her duty to a client may be required to forfeit some or all of the compensation the lawyer has earned in the matter." *Id*., at ** 11-12 (citing *Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983)). Thus, the initial question which precedes the imposition of fee forfeiture is "What fee did the attorney earn?" This initial question was the only question answered by the Trial Court applicable to the attorneys' fees issue. The Trial Court merely set what it determined was a reasonable fee and, as Mr. Lee admits, the Trial Court neither specifically found that fee forfeiture was appropriate nor held that Mr. Lee's fees were being reduced by virtue of fee forfeiture. We have noted various matters which the Trial Court considered in reaching its determination as to a reasonable attorneys' fee for Mr. Lee under the circumstances presented, specifically the conflict in Mr. Lee's representation of both Mr. Shoughrue and Devin, the arrangements made by Mr. Lee to finance litigation of the case, the lack of communication between Mr. Lee and Devin's representative, and Mr. Lee's failure to consider Devin's needs and objectives. We find that each of these is a "pertinent matter" under Tenn. Code Ann. § 29-26-120 and was, therefore, appropriately considered in reaching a conclusion as to what constitutes a reasonable attorneys' fee for the services performed by Mr. Lee. Furthermore, although we find that each of these matters influenced the Trial Court in its decision as to Mr. Lee's attorney fee, it is our determination that the Trial Court's decision was governed primarily by the fact that the settlement of the case was accomplished by Mr. McDonald, not Mr. Lee. As the Trial Court stated:

> So had not Mr. Lee left the mediation and Mr. McDonald continued to negotiate and do what he did, this child in the Court's opinion would not have received any benefit up to today in all probability.

Mr. McDonald then accomplished the settlement of this case. The guardian appointed by the Juvenile Court and this Court found the settlement to be in the child's best interest. Again, considering the record of this case and the likelihood of any recovery at trial and these factors that I've just noted, the Court approved the settlement as being in the child's best interest. Again, it's fortunate for the child that Mr. McDonald did what he did.

Now, the Court is left with this conclusion. As I said, had not Mr. Lee done what he did through himself or others, this Court would not be here today because there would have been no possibility for settlement. Had not Mr. McDonald done what he did and taken and devoted all his time during that period of time to do this difficult negotiation and handle this difficult situation, the child would not, in the Court's opinion, have received anything to this day.

Neither the Trial Court nor this Court can say with absolute certainty what would have happened had Mr. McDonald not negotiated a settlement at the second mediation. However, what *did* happen is that a mediation abandoned by Mr. Lee ended in a settlement negotiated by Mr. McDonald, and that settlement was found to be in Devin's best interest. In fact, Appellants' brief states that "excellent results were obtained . . .", with those "excellent results" being the settlement. Our Legislature in enacting Tenn. Code Ann. § 29-26-120 clearly intended to limit a medical malpractice claimant's attorneys' fees to thirty-three and one-third percent of all the damages awarded to claimant. Here, the Trial Court was faced with an allocation of attorneys' fees between two competing law firms with the statutory limitation as to the maximum amount of those reasonable fees. The Trial Court found that both Mr. Lee and Mr. McDonald contributed and provided valuable services which resulted in a satisfactory settlement approved by the Trial Court as being in the best interest of Devin. The Trial Court then considered all pertinent facts in arriving at what would be a reasonable attorney fee for Mr. Lee and Mr. McDonald under the rather peculiar facts of this case. Under all of the circumstances noted herein, we cannot say that the Trial Court "either applied an incorrect legal standard or reached a clearly unreasonable decision" in its award of attorneys' fees to Mr. Lee or to Mr. McDonald. Therefore, we find no abuse of discretion by the Trial Court in its award of attorneys' fees to Mr. Lee and the Lee firm and to Mr. McDonald and the McDonald firm.

As to the issue of whether the Trial Court erred in awarding attorneys' fees to Mr. McDonald and the McDonald firm from that portion of the settlement amount reserved for attorney fees, it is also our determination that Mr. Lee and the Lee firm are without standing to raise this issue. This is so because they have no claim to these funds given the Trial Court's award of their attorneys' fees and our affirmance of that award. In *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), we set forth three indispensable elements which a party must demonstrate in order to establish standing to prosecute a cause of action:

First, the party must demonstrate that it has suffered an injury which is "distinct and palpable," ... and not conjectural or hypothetical.... Second, the party must establish a causal connection between that injury and the conduct of which he

-16-

complains....  Third, it must be likely that a favorable decision will redress that injury.  (citations omitted.)

As previously noted, the Trial Court entered its order approving the settlement on July 13, 2001.  The proposed settlement agreement approved by this order, and filed under seal, reserves for attorneys' fees an amount equaling one-third of the settlement amount. The order provides that attorneys' fees shall not exceed this amount and that such fees will be disbursed upon further order of the court.  The Trial Court's subsequent order awarding attorneys' fees does not award as attorneys' fees the full amount of monies reserved for that purpose and provides that the balance of the reserved monies shall be returned to Devin's account.  Because a sufficient amount of money was available for the payment of Mr. Lee's and the Lee firm's attorneys' fees after the fee award to Mr. McDonald and the McDonald firm, Mr. Lee and the Lee firm have failed to show that they were injured as result of the Trial Court's fee award to Mr. McDonald and his firm even if the award to Mr. McDonald and the McDonald firm was error.  Mr. Lee and the Lee firm have failed to establish a causal connection between the Trial Court's failure to award them a larger fee and the award of attorneys' fees to Mr. McDonald and the McDonald firm. Accordingly, Mr. Lee and the Lee firm have failed to demonstrate either the first or second element necessary to establish standing as set forth in *Petty, supra.*

We also note that if we adopted Appellants' position and awarded Mr. Lee and the Lee firm attorneys' fees in an amount equaling one-third of the settlement amount, Mr. McDonald and the McDonald firm either would receive no fees for their services resulting in the settlement which Appellants' brief describes as being an "excellent result", or the Trial Court would have to ignore the clear mandates of our Legislature and award total attorneys' fees in an amount exceeding thirty-three and one-third percent of all damages awarded to these claimants in this medical malpractice case.  We decline to do either, and instead hold that the Trial Court did not abuse its discretion in its award of attorneys' fees to Mr. McDonald and the McDonald firm.

The last issue raised in this appeal is whether Ms. Bjornstad has standing to pursue an appeal regarding the attorneys' fee dispute in this case.  Our review of the brief filed on behalf of Ms. Bjornstad reveals that it presents no issues for our review which were not otherwise presented by Mr. Lee or Mr. McDonald.  Each of those issues is addressed by our decision herein and the question of Ms. Bjornstad's standing is, accordingly, pretermitted.

For the foregoing reasons, the judgment of the Trial Court is affirmed and the cause is remanded for collection of costs below.  Cost of appeal are adjudged the Appellants, J.D. Lee and the law firm of Lee, Lee & Lee, and their surety.

_____
D. MICHAEL SWINEY, JUDGE