**Affirmed and Memorandum Opinion filed December 13, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00898-CV

### JOSE ALONSO, Appellant

### V.

### WESTIN HOMES CORPORATION, WESTIN HOMES OF TEXAS, LTD., AND WESTIN HOMES AND PROPERTIES, L.P., Appellees

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-72434**

## M E M O R A N D U M   O P I N I O N

In this premises liability case, a subcontractor's employee was injured while working on the property owner's jobsite. The employee sued the property owner, alleging various theories of negligence. The property owner moved for summary judgment, *inter alia*, under Chapter 95 of the Texas Civil Practice & Remedies Code. The trial court granted the property owner's summary judgment motion. On appeal, the subcontractor's employee urges that summary judgment was improper because he provided evidence sufficient to raise a material fact issue on the Chapter 95 requirements that, to be liable for a premises liability claim, a

property owner must retain some control over the manner in which the work is performed and have actual knowledge of the dangerous condition that caused the injury.[1]

Because we conclude that there is no genuine issue of material fact on the property owner's lack of actual knowledge of the dangerous condition, we affirm.

## Background

Jose Alonso worked as a framer on new home construction sites owned by Westin Homes Corporation, Westin Homes of Texas, Ltd., and Westin Homes and Properties, L.P. (collectively, Westin) when he fell and injured his arm. He worked directly for a framing subcontractor, Saul Cabrera, who in turn worked for Westin's framing contractor, Eduardo Carrizalez. Cabrera had no written agreement with either Westin or Carrizalez. Carrizalez operated under an "Independent Contractor's Agreement" with Westin. When the incident occurred, Alonso and his co-workers were short of appropriate materials, so they were "piecing together a puzzle" of plywood to form the flooring for the second level of a home. Alonso stepped on a weak spot in the flooring, which broke and caused him to fall. Alonso had been using a circular saw; the saw had been modified by Cabrera to prevent the safety cover on the blade from engaging. When Alonso fell, he had the saw in his hand and attempted to toss it away, but accidentally engaged the saw so that the blade was spinning when it fell. Alsonso landed on the saw and sliced his arm on the blade. He suffered a severe laceration and nerve damage from the incident.

As is relevant here, Alonso sued Westin for damages resulting from its alleged negligence per se, gross negligence, negligence, and premises liability.[2]

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 95.003.

Westin filed a combined traditional and no-evidence motion for summary judgment.  In it, Westin urged that (1) there was no evidence of negligence per se and gross negligence; (2) Westin exercised no control over the manner of work and had no actual knowledge of the dangerous condition that caused Alonso's injury, as required under Chapter 95 for a premises liability case; and (3) Westin had no duty to Alonso.  Alonso responded to Westin's motion, asserting various facts that he contended showed that Westin exercised control, had actual knowledge, and owed him a duty.  Alonso did not respond to Westin's no-evidence points.

The trial court granted Westin's motion for summary judgment, which later became final when the other claims in the suit were resolved.  This appeal timely followed.

## Analysis

In a single issue, Alonso asserts that the trial court "abused its discretion" in granting summary judgment in favor of Westin pursuant to Chapter 95 of the Texas Civil Practice & Remedies Code.[3]  We begin by laying out the appropriate standard of review for this summary judgment case.

### A. Standard of Review

We review summary judgments de novo.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  Movants for a traditional summary judgment, such as Westin, must show that there is no genuine

---

[2] Alonso also included Carrizalez and Cabrera in his lawsuit; Alonso took a default judgment against Cabrera and settled his case against Carrizalez.  Thus, the only parties to this appeal are Alonso and Westin.

[3] Alonso has apparently abandoned his general negligence claim on appeal, restricting his argument to Chapter 95.  At any rate, if Chapter 95 applies, as the parties agree it does here, it is the plaintiff's "sole means of recovery."  *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015).

issue of material fact and that they are entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. A defendant such as Westin is entitled to summary judgment if the evidence conclusively negates at least one essential element of each of Alonso's causes of action. *See Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004). If the defendant—Westin—establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff—Alonso—to present evidence raising an issue of fact. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). We review the evidence in the light most favorable to the nonmovant, Alonso, crediting evidence favorable to Alonso if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort*, 289 S.W.3d at 848.

With this standard in mind, we turn to the law governing this case.

**B. Texas Civil Practice & Remedies Code Chapter 95**

The parties do not dispute that Chapter 95 of the Civil Practice & Remedies Code governs this dispute, as it applies to claims against a property owner for personal injury to a subcontractor's employee that arise from the condition or use of an improvement to real property when the subcontractor's employee constructs the improvement. *See* Tex. Civ. Prac. & Rem. Code § 95.002. This chapter contains the following limitation on liability:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or maintains some control over the manner in which the work is performed, other than the right to

order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003. Both subsection 95.003(1)'s control requirement and subsection 95.003(2)'s actual knowledge requirement must be met before liability will be imposed on the property owner. *Oiltanking Houston, L.P. v. Delgado*, — S.W.3d—, No. 14-14-00158-CV, 2016 WL 4145997, at *5 (Tex. App.—Houston [14th Dist.] Aug. 4, 2016, pet. filed) (op. on reh'g) (citing *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 588, 699 n.15 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (en banc)). And subsection 95.003(2) requires that a plaintiff prove the owner had actual knowledge of a dangerous condition on the premises— not merely constructive knowledge. *Id.* (citing *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) and *Dyall*, 152 S.W.3d at 699).

Bearing in mind the standard of review and governing law, we next determine whether Alonso raised a fact issue on the element of actual knowledge. *See Oiltanking Houston*, 2016 WL 4145997, at *12 ("Having concluded there is no evidence of actual knowledge, we need not address section 95.003(1)'s control prong.").

**C. Westin Had No Actual Knowledge of the Dangerous Conditions**

Alonso identifies the "dangerous conditions" on the Westin jobsite as including "the lack of sufficient materials, the unsafe pace in which the workers, including [Alonso], were required to work, and the manner in which the electric saws at the premises were utilized and secured." To support his claim that Westin

had actual knowledge of these dangerous conditions, Alonso points to the following:

- Westin's construction manager, Matt Rizvan, was present at the jobsite "daily";

- Westin "required" Alonso to "piece together flooring from discarded material gathered from scraps";

- Alonso had to "rush to finish the framing project so that other crews could come in sooner"; and

- Alonso used a saw that had been modified to impair the safety mechanism.

After reviewing the record, we conclude that, at most, Alonso's evidence demonstrates constructive, not actual, knowledge of the allegedly dangerous conditions at the jobsite.

First, Alonso's testimony that Rizvan was present on the jobsite "daily" supports only an inference that Rizvan saw how Alonso and his co-workers were piecing together the flooring, which, in turn, could be potentially dangerous. Indeed, Alonso's deposition testimony confirms that one can only infer that Rizvan even saw the state of the floor Alonso was working on: Alonso stated Rizvan "had to have seen" how they were piecing together the flooring because Rizvan was on the first floor of the house "looking up there where" Alonso and his co-workers were completing the flooring shortly before the accident occurred. However, Alonso acknowledged that Rizvan was not there when the accident occurred; thus, at most, Rizvan may have seen Alonso and his co-workers piecing together the floor and may have been aware that such activity was potentially dangerous. But "knowledge that an activity is potentially dangerous is not sufficient to satisfy the

6

second prong of Section 95.003—actual knowledge of the danger is required." *Dyall*, 152 S.W.3d at 709 n.18.

Next, regarding Westin's "requirement" that Alonso and his co-workers use scrap materials to complete piecing together the flooring, the record again supports only an inference that Westin was aware that the employees on this jobsite were piecing together the flooring. Alonso admitted in his deposition that he complained about the lack of materials only to Cabrera. Alonso also acknowledged that he never directly informed anyone from Westin that more framing material was needed on the site because he never spoke directly to a Westin representative. And although Alonso testified that he overheard Rizvan being told on the day of the accident that the workers did not have enough material to complete the framing job, there is no evidence from which to infer that Rizvan or any other Westin representative instructed them to construct the floor with scrap material.

Instead, Alonso stated that Westin's general practice was to order the framing materials for the jobsite. Alonso testified, in general, that if Westin didn't order enough, Westin did "not want to order or get some more." Alonso explained that Westin did not want to make small deliveries and, in the past, had asked the workers to "finish it as you can and complete the job." But this testimony is not evidence that Westin "required" Alonso and his co-workers to use scrap material on the day of the accident. Rather, it is only evidence that Westin may have been aware that Alonso and his co-workers were engaging in an activity that *potentially* could be dangerous. *See id.*; *see also Bishop v. Nabisco, Inc.*, No. 14-03-00639-CV, 2004 WL 832916, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 20, 2004, no pet.) (mem. op.) (affirming summary judgment where (1) independent contractor employed by Nabisco was directed by Nabisco to cover holes created

7

during contractor's work, (2) contractor constructed wooden covers without instructions on how to build covers but with materials provided by Nabisco, and (3) contractor's employee fell through one of the covers; there was no evidence that Nabisco actually knew particular cover had been damaged even though Nabisco employees acknowledged damage to covers was possible).

Third, Westin's expectation that the work be finished timely so other crews could perform their work may have pressured Alonso and his co-workers to work more quickly than they would have liked. But the expectation that the framing work be completed quickly was only expressed to Alonso by Cabrera; no one from Westin ever told Alonso to speed up his work. And this expectation hardly establishes that Westin was actually aware that Alonso and his co-workers were rushing their work and thereby engaging in potentially dangerous activity. Alonso's testimony that Westin expected the work to be finished in a short time-frame is simply not evidence that Westin actually knew that, on the day that Alonso was injured, he was working in an unsafe, hurried fashion. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time.").

Finally, Alonso presented no evidence that any of Westin's representatives noticed the unsafe, modified saws. Rather, Alonso testified that Cabrera modified and provided the saws. Perhaps Westin *should have known* that these saws were unsafe. But Chapter 95 requires actual knowledge of a dangerous condition, not constructive knowledge, i.e., what a person "should have known." *See Ineos USA v. Elmgren*, —S.W.3d—, No. 14-0507, 2016 WL 3382144 at *2 (Tex. June 17, 2016) ("When Chapter 95 applies, . . . it grants the property owner additional

8

protection by requiring the plaintiff to prove that the owner 'had actual knowledge of the danger or condition,' so the owner is not liable based merely on what it reasonably should have known.").

In sum, none of the record evidence permits even an inference that Westin had actual knowledge of the dangerous conditions that Alonso has identified. As discussed above, at most, Alonso's evidence establishes that Westin had constructive knowledge of these conditions. And Chapter 95 requires more than constructive knowledge—it explicitly requires actual knowledge. Tex. Civ. Prac. & Rem. Code § 95.003(2). Because both subsection 95.003(1)'s control requirement and subsection 95.003(2)'s actual knowledge requirement must be met before liability will be imposed on the property owner,[4] Alonso's failure to raise a fact issue concerning actual knowledge requires us to overrule his issue.

## Conclusion

Having overruled Alonso's single appellate issue, we affirm the trial court's judgment.

/s/    Sharon McCally
        Justice

Panel consists of Justices Christopher, McCally, and Brown.

---

[4] *See Oiltanking Houston*, 2016 WL 4145997, at \*5, \*12 (reversing jury verdict in favor of plaintiff because there was no evidence defendant had actual knowledge, without addressing subsection 95.003(1)'s control requirement).