IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2020 Session

## BRIANNE MARIE (LANE) BAKER v. KENNETH DEAN BAKER

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2016-CV-1247       Ross H. Hicks, Judge**

_____

### No. M2020-00374-COA-R3-CV
_____

A father challenges the trial court's child support determination, property division, and attorney fee award. In its calculation of gross income for child support purposes, the trial court properly declined to give the father credit for retirement benefits awarded as part of the property division. If the value of the father's retirement benefits has significantly appreciated since the time of the divorce, the father may bring a petition to modify the child support award to reflect an increase in the mother's gross income. We affirm the decision of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Kenneth Dean Baker.

Martin Stephen Sir, Nashville, Tennessee, for the appellee, Brianne Marie Baker.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Brianne Marie Baker ("Mother") and Kenneth Dean Baker ("Father") married in 2004 and have two minor daughters. Father is a chief warrant officer in the army. Mother held a retail position for a brief period during the marriage but was mainly a homemaker. Although trained as an x-ray technician prior to the marriage, she did not pass the state licensure requirements.

Shortly after Mother and the children joined Father at a new duty posting in Louisiana in 2011, he admitted having an extramarital affair with Sarah Lane, with whom

he had a child. Father was deployed to Germany beginning in 2012, and the family lived there for approximately four years. The marriage deteriorated and, in May of 2016, Mother left Germany with the parties' two children to return to Tennessee. Since that time, Mother and the children have resided with Mother's parents in Clarksville. Mother worked briefly as a job skills instructor and then cared for her grandmother for six months. She failed to pass the testing required to become a nurse assistant.

After Mother's departure from Germany, Father filed an action under the Hague Convention in the federal district court in Nashville on June 17, 2016, seeking to have the children returned to Germany. In April 2017, the federal district court determined that the children should remain in Tennessee. Father returned to Tennessee in June 2017 and bought a house on Patton Road in Clarksville without Mother's knowledge or consent; he and Ms. Lane and their son moved into the house and had a second child in September 2018.

Mother filed the present action for divorce in June 2016 on grounds of irreconcilable differences and inappropriate marital conduct. After a hearing in November 13, 2019, the trial court entered an order on December 4, 2019, awarding Mother a divorce based upon inappropriate marital conduct and taking the remaining issues under advisement. In a memorandum opinion entered on January 17, 2020, the trial court made detailed findings of fact and conclusions of law, which it then incorporated into the final order entered on February 20, 2020. The trial court named Mother the primary residential parent and ordered Father to pay child support in the amount of $1,064.00 a month pursuant to the child support guidelines. Based upon the relevant statutory factors, the trial court awarded Mother alimony in futuro in the amount of $1,300.00 a month until she began receiving payments from Father's retirement pay. The court found Father dissipated the parties' marital assets in the total amount of $159,367.61 and adopted most of Mother's proposed division of assets and liabilities. The court also awarded Mother her attorney fees, as described in her attorney fee affidavit, as alimony in solido.

In this appeal, Father raises the following issues: (1) Whether the trial court erred in establishing gross monthly incomes for child support calculation purposes because Father was not fully credited with moneys paid for alimony, retirement, and healthcare expenses; (2) whether the trial court erred in awarding Mother attorney fees for a Hague Convention case that was decided and completed in the U.S. district court; and (3) whether the trial court erred in awarding excessive attorney fees to Mother. Mother further asserts that she should be awarded her attorney fees on appeal or damages for a frivolous appeal and that the costs of appeal should be assessed to Father.

ANALYSIS

I. Gross income for child support purposes.

Under Tennessee law, parents must "support their minor children in a manner commensurate with their own means and station in life." *Richardson v. Spanos*, 189 S.W.3d 720, 724 (Tenn. Ct. App. 2005). The child support guidelines govern the process and criteria for determining the amount of a parent's child support obligation. *See* Tenn. Code Ann. § 36-5-101(e); *Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *6 (Tenn. Ct. App. Nov. 6, 2008). Trial courts still retain some discretion when determining child support despite the adoption of the child support guidelines. *Horine v. Horine*, No. E2013-02415-COA-R3-CV, 2014 WL 6612557, at *4 (Tenn. Ct. App. Nov. 24, 2014) (citing *Richardson*, 189 S.W.3d at 725). Therefore, we review a trial court's child support determination under the abuse of discretion standard. *Richardson*, 189 S.W.3d at 725. Pursuant to this standard, an appellate court cannot "substitute [its] discretion for that of the trial court," and the trial court's "decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness." *Id.* (citations omitted). A trial court abuses its discretion "when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*

The first step in determining child support is to calculate the gross income of each parent. *See* TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1); *Stack v. Stack*, No. M2014-02439-COA-R3-CV, 2016 WL 4186839, at *9 (Tenn. Ct. App. Aug. 4, 2016). Gross income is generally defined to "include all income from any source . . . , whether earned or unearned." TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1). In the present case, the trial court determined Mother's gross monthly income to be $1,500.00 and Father's to be $8,390.00. Father asserts that the trial court erred in failing to give him credit for money he paid for alimony and retirement benefits.

In its final divorce decree, the trial court awarded Mother a portion of Father's military retirement equal to "50% times a fraction, the numerator of which is 186 months of marriage . . . during the [Father's] creditable military service, divided by [the] total number of months of [Father's] creditable military service, projected to be 20 years, 6 months and 9 days." At the time of the divorce, Father had not yet retired, but he expected to do so in May 2020. The trial court awarded Mother alimony in futuro in the amount of $1,300.00 a month until she began receiving payments directly from the DFAS ("Defense Financing Accounting Service") for her portion of Father's military retirement pay. Moreover, in the event the monthly payments from DFAS did not total $1,300.00, the trial court ordered that Father "shall make up the difference" as alimony in futuro.

Immediately after the entry of the divorce decree, Mother was entitled to receive alimony of $1,300.00 a month. Father argues that the trial court erred in failing to give him credit for this amount in its calculation of his and Mother's gross monthly income for child support purposes. We disagree. The definition of gross income contained in the child support guidelines contains a list of items to be included in the calculation, and one of these subsections addresses alimony. *See* TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1)(xxii). Thus, gross income includes "[a]limony or maintenance received from persons other than parties to the proceedings before the tribunal." *Id.* The alimony payments at issue here were received from Father, a party to the proceedings before the court. This court has previously interpreted this provision of the child support guidelines to "exclude[] from the recipient's income for child support purposes those alimony payments paid by the other party to the current proceeding." *Ghorashi-Bajestani v. Bajestani*, No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *7 (Tenn. Ct. App. Sept. 24, 2013); *see also Rentz v. Rentz*, No. E2013-02414-COA-R3-CV, 2014 WL 3748562, at *3-4 (Tenn. Ct. App. July 30, 2014). Thus, the trial court did not err in failing to include Father's alimony payments in calculating Mother's gross income for child support purposes.[1]

The next issue is the impact of Father's retirement in May 2020, when Mother began receiving direct payments out of Father's military retirement from DFAS. Father argues that he should receive credit for the DFAS payments received by Mother. We disagree. The child support guidelines provide that gross income includes income from "[p]ensions or retirement plans including, but not limited to, Social Security, Veterans Affairs Department, Railroad Retirement Board, Keoughs, and Individual Retirement Accounts (IRAs)." TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1)(viii). However, "[u]nder Tennessee law, [Father's] military retired pay is marital property subject to equitable distribution." *Johnson v. Johnson*, 37 S.W.3d 892, 895 (Tenn. 2001), *abrogated on other grounds by Howell v. Howell*, --- U.S. ---, 137 S. Ct. 1400 (2017). Thus, as previously stated, the trial court divided Father's military retirement as part of the property division. Tennessee Code Annotated section 36-4-121(b)(1)(E), part of the provisions concerning the division of marital property, states that "assets distributed as marital property will not be considered as income for child support or alimony purposes, *except to the extent the asset will create additional income after the division*." (Emphasis added).

In *Farmer v. Stark*, No. M2007-01482-COA-R3-CV, 2008 WL 836092 (Tenn. Ct. App. Mar. 27, 2008), this court encountered facts similar to those at issue here. The mother in *Stark* challenged the trial court's child support determination in part based upon its failure to include as part of the father's gross income withdrawals he made from retirement

---

[1] Father also suggests that the amount of alimony should have been subtracted in calculating *his* gross income. There is no authority to support this argument. All of Father's income qualifies as gross income under the guidelines definition. *See* TENN. COMP. R. & REGS. § 1240-02-04-.04(3)(a)(1). He received proper credit for support of his in-home children.

accounts. *Stark*, 2008 WL 836092, at *1. As in the present case, the retirement accounts at issue had been distributed as part of the division of marital property. *Id.* at *5. After summarizing the pertinent provisions of the child support regulations and property division statutes (set forth above), this court considered analogous caselaw regarding capital gains and concluded that the withdrawals from the father's retirement account should properly be considered income only "to the extent they represent an appreciation in the value of those accounts since the time of the divorce." *Id.* at *6. As this court explained with respect to a deferred compensation account divided as part of the division of marital property, "any distributions of the principal amount of this asset would not be included as income to either party for child support purposes, based on the plain language of [Tenn. Code Ann. § 36-4-121(b)(1)(E)]." *Bajestani*, 2013 WL 5406859, at *5.

Father also argues that he should receive credit for healthcare expenses in the calculation of his gross income for child support purposes. Pursuant to the parenting plan incorporated into the final decree, Father is required to provide the two children of the parties' marriage with health insurance, with the parties dividing uncovered expenses "on a pro rata basis in accordance with their respective incomes." Although healthcare expenses are not considered in calculating gross income under the child support guidelines, Father is correct that such expenses may be deducted in determining child support. *See Stack*, 2016 WL 4186839, at *11. The guidelines provide for the deduction of each parent's portion of the children's health insurance premium. *See* TENN. COMP. R. & REGS. §§ 1240-02-04-.04(8)(b), 1240-02-04-.08(2)(d)(1)(i). Under the guidelines, "[o]nly amounts actually paid are included in the calculation." TENN. COMP. R. & REGS. § 1240-02-04-.08(2)(d)(1)(iii). Thus, "[p]ayments that are made by a parent's employer, but not deducted from the parent's wages, shall not be included." *Id.* Father's income and expense statement shows that health insurance is provided by his employer at zero cost to him. Thus, we find no abuse of discretion in the trial court's failure to credit Father for such an expense.

Finally, Father claims that the trial court erred in failing to deduct amounts he is paying for the children's braces. The child support guidelines allow for the deduction of recurring uninsured medical expenses. TENN. COMP. R. & REGS. §§ 1240-02-04-.04(8)(d), 1240-02-04-.08(2)(d)(3). These provisions apply "[i]f uninsured medical expenses are routinely incurred so that a specific amount can be reasonably established." TENN. COMP. R. & REGS. §§ 1240-02-04-.04(8)(d)(2), 1240-02-04-.08(2)(d)(3)(i). Otherwise, the trial court's order shall provide for the pro rata sharing of these expenses, as stated in the final decree in the present case. *See* TENN. COMP. R. & REGS. §§ 1240-02-04-.04(8)(d)(3), 1240-02-04-.08(2)(d)(3)(ii). Father testified that he was paying for uncovered braces expenses for both children. In his proposed findings of fact and conclusions of law, he listed the children's braces as a marital debt to be equitably divided by the trial court. Father did not submit a child support worksheet (or state a child support amount) with his proposed parenting plan. In light of the absence of evidence that the braces expenses were routinely incurred, the trial court did not abuse its discretion in failing to deduct them from Father's gross income in calculating child support.

For the foregoing reasons, we conclude that the trial court did not err in failing to give Father credit for alimony or healthcare expenses. With respect to retirement benefits, the trial court properly declined to give Father credit for retirement benefits awarded to Mother as part of the property division. If the value of Father's retirement benefits has significantly appreciated since the time of the divorce, Father may bring a petition to modify the child support award to reflect an increase in Mother's gross income.

II. Dissipation of marital assets.

Father's argument here is that the trial court erroneously awarded Mother her attorney fees for the Hague Convention case because such an award violates principles of federal preemption, res judicata, and collateral estoppel. As explained below, however, Father misconstrues the trial court's award. Based upon its findings concerning Father's dissipation of marital assets, the trial court made an award to Mother as part of the division of marital property.

Decisions concerning the division of marital property are necessarily fact-specific. *Edenfield v. Edenfield,* No. E2004-00929-COA-R3-CV, 2005 WL 2860289, at *7 (Tenn. Ct. App. Oct. 31, 2005). To be considered equitable, the division of marital property does not need to be "precisely equal" and it is not necessary that each party "receive a share of every piece of marital property." *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly*, 130 S.W.3d 783, 785-86 (Tenn. 2004); *see also Larsen-Ball v. Ball*, 301 S.W.3d 228, 234-35 (Tenn. 2010).

The division of marital property "is not a mechanical process" but rather is guided by the factors set forth in Tenn. Code Ann. 36-4-121(c). *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). A trial court considers and weighs "the most relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). In this case, the trial court conducted a detailed analysis of the statutory factors and stated the following findings and conclusions regarding factor (5)(B), which addresses dissipation of assets:

> For the period December 4, 2015 through January 16, 2019, [Father] wastefully transferred from his USAA *50703 account by depositing marital funds to the USAA *38539 joint account with Ms. Lane, in the total amount of $15,499.04. (Trial Exhibit 21).

> [Father] wastefully spent marital funds of $4,099.91 to pay for Ms. Lane's travel to Germany. (Trial Exhibit 22).

For the period September 22, 2017 through November 2019, [Father] wastefully incurred increased living expenses to support his paramour, Ms. Lane, a total of $73,330.66 representing the increased cost of $2,820.41 per month x twenty-six (26) months.

[Father] wastefully expended marital income of $50,000 for attorneys' fees for the Hague Convention case.

[Father] failed to share one-half of the parties' tax refunds ($16,438) for the years 2016, 2017 and 2018.

The foregoing expenditures were wasteful, reduced the marital estate available for distribution and were made for a purpose contrary to the marriage.

The foregoing expenditures were incurred either before or after the Complaint for Divorce was filed and were in proximity to the breakdown of the marital relationship.

The total amount of dissipation stated above equals $159,367.61.

This factor favors [Mother].

In the division of marital property, the trial court made the following specific award: "[Mother] shall be awarded all of Husband's TSP and the sale proceeds from the Louisiana property to account for [Father's] dissipation and [Mother's] attorneys' fees in this matter." Husband's TSP (Thrift Savings Plan) was valued at $61,520.71; the Louisiana property sale proceeds totaled $11,281.36.

Thus, the trial court awarded Mother assets worth a total of $72,802.07 to account for Father's dissipation and to cover her attorney fees. As will be discussed below, Mother's attorney fees for the divorce were over $35,000.00. The trial court found dissipation of marital assets totaling $159,367.61. Under the circumstances, we need not address the issue raised by Father because the amount remaining after the deduction of Mother's divorce attorney fees does not fully compensate her for the dissipation of marital assets found by the trial court, even without the amount spent on Hague Convention attorney fees.

III. Attorney fees.

Father asserts that the trial court erred by awarding excessive attorney fees to Mother.

In Tennessee, courts follow the American Rule, which provides that litigants must pay their own attorney fees unless there is a statute or contractual provision providing otherwise. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). Mother asserted a claim for attorney fees pursuant to Tenn. Code Ann. § 36-5-103(c), which "authorizes courts to award reasonable attorney's fees to the prevailing party in an action to enforce any decree for alimony, child support, or child custody." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017). A decision to award attorney fees to the prevailing party under Tenn. Code Ann. § 36-5-103(c) is within the discretion of the trial court, and we will not overturn the trial court's decision absent an abuse of discretion. *Id.* Similarly, a trial court's determination regarding the reasonableness of the amount of attorney fees requested is subject to review under the abuse of discretion standard. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002)).

In the present case, after the hearing and the court's award of a divorce to Mother, counsel for Mother submitted an affidavit with attachments detailing the fees and expenses (totaling $36,768.50) incurred in his representation of Mother in the divorce. Then, on January 17, 2020, the trial court entered its memorandum opinion resolving the remaining issues and providing that "[Mother] shall be awarded all of [Father's] TSP and the sale proceeds from the Louisiana property to account for [Father's] dissipation and [Mother's] attorneys' fees in this matter." The memorandum opinion further states that Mother's attorney fees are awarded as alimony in solido, "based upon [Mother's] Attorneys' Fee Affidavit which shall be paid from [Father's] TSP account as discussed earlier." The court incorporated the memorandum opinion into its final order entered on February 20, 2020.

On appeal, Father requests a remand to allow the trial court to consider the reasonableness of Mother's attorney fees. He argues that "there appears to be some redundancy" in some of the items on Mother's attorney's statement of fees and expenses. He further suggests that, because of the overlap in facts between the Hague Convention case and the divorce case, the divorce fees are excessive. We note that the specific fees flagged by Father are not included in the attorney fee request submitted by Mother. We need not, however, consider Father's objections because he did not challenge the reasonableness of Mother's attorney fee at the trial level.

In *Burchfield v. Burchfield*, No. M2017-01326-COA-R3-CV, 2019 WL 2185513 (Tenn. Ct. App. May 21, 2019), we addressed the same issue. The father in *Burchfield* asserted that the trial court erred in awarding the mother $51,742.50 in attorney fees because the attorney fees "were not reasonable under any stretch of the imagination." *Burchfield*, 2019 WL 2185513, at *18. The mother submitted an affidavit of time and expenses in an amount found by the trial court to be reasonable. *Id.* at *19. Based upon the father's "strong defensive reaction" to the mother's request for a reduction in his parenting time, the trial court awarded her only 75% of the total requested amount, or

$51,742.50. *Id.* The father "did not object to the fees or request a hearing on the reasonableness of the fees before the trial court." *Id.* Rejecting the father's argument on appeal, we reasoned:

> If a trial court awards attorney fees without hearing proof regarding the reasonableness of the fees,
>
>> "it is *incumbent* upon the party challenging the fee [to request a] hearing" on the reasonableness of the fees awarded. *Kline [v. Eyrich]*, 69 S.W.3d [197,] 210 [(Tenn. 2002)] (emphasis in original); *see also Kahn [v. Kahn]*, 756 S.W.2d [685,] 697 [(Tenn. 1988)]. Alternatively, the party challenging the fees could convince the appellate court that he was denied the opportunity to have a hearing on the reasonableness of the fees through no fault of his own. *Kahn*, 756 S.W.3d at 697. This court will not reverse a trial court's award of attorney's fees merely because the record does not contain proof establishing the reasonableness of the fees. *Kline*, 69 S.W.3d at 210. The record must contain some evidence showing that an award of attorney's fees is unreasonable before a reversal of the fees is justified. *Id.* at 210. Additionally, the record should contain at least an affidavit of the lawyer's hourly rate and time spent on the case. *See Miller [v. Miller]*, 336 S.W.3d [578,] 587 [(Tenn. Ct. App. 2010)].

*Id.* at *18 (quoting *Eberbach v. Eberbach*, No. M2013-02852-COA-R3-CV, 2014 WL 7366904, at *6 (Tenn. Ct. App. Dec. 23, 2014)). We concluded that the father had waived the issue of the reasonableness of the attorney fees and could not raise the issue on appeal for the first time. *Id.* at *19.

For the same reasons stated in *Eberbach*, we conclude that Father waived the issue of the reasonableness of Mother's attorney fees by failing to raise the issue before the trial court.

IV. Frivolous appeal.

We exercise our discretion pursuant to Tenn. Code Ann. § 27-1-112 to deny Mother's request for her attorney fees on appeal based on her argument that Father's appeal was frivolous.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Kenneth Dean Baker, and execution may issue if necessary.


_/s/Andy D. Bennett_____
ANDY D. BENNETT, JUDGE